UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Vasudeva Mahavisno,

    Plaintiff,

v.                                      Case No. 13-12207
                                      Honorable Sean F. Cox

Compendia Bioscience, Inc., and Life
Technologies Corporation,

    Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

This is a copyright infringement case. Plaintiff Vasudeva Mahavisno ("Plaintiff") alleges that Defendant Compendia Bioscience, Inc. ("Compendia") and Defendant Life Technologies Corp. ("Life" or "Life Technologies") (collectively, "Defendants") infringed on his copyright in a computer program called "Oncomine 3.5." Defendants argue, among other things, that Plaintiff does not own any such copyright in any version of the Oncomine software.

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed by the parties. For the following reasons, this Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss.

**BACKGROUND**

In 2002, Plaintiff Vasudeva Mahavisno was a student at the University of Michigan ("U-M") working as a computer consultant in the Department of Pathology, under the direction of Professor

Arul Chinnaiyan, M.D., Ph.D. ("Chinnaiyan"). (Pl.'s Compl. at ¶¶ 15, 16).

In 2002, Chinnaiyan and a Ph.D. candidate, Daniel Rhodes ("Rhodes"), conceived an idea for a computer program that would allow cancer researchers to process and analyze information over the internet. (Pl.'s Compl. at ¶ 17). Chinnaiyan and Rhodes approached Plaintiff about writing the software for their computer program, which was to be called "Oncomine." (Pl.'s Compl. at ¶ 19). Plaintiff began writing the software in 2002 and finished the first version, entitled Oncomine 2.0, in November 2003. (Pl.'s Compl. at ¶ 22).

After he graduated in 2003, Plaintiff continued to work at U-M as a full time employee. (Pl.'s Compl. at ¶ 21). Plaintiff wrote additional code for, and made enhancements to, the Oncomine 2.0 software, which eventually culminated in the release of Oncomine 3.0 in 2005. (Pl.'s Compl. at ¶¶ 23, 24).

In 2006, Chinnaiyan and Rhodes decided to form Compendia Bioscience, Inc. U-M and Compendia entered into a licensing agreement, whereby U-M granted Compendia an "exclusive license with the right to grant sublicenses to create derivative works, and to use, reproduce, market, distribute, publicly display, publicly perform, and otherwise commercially exploit the program [Oncomine] and derivative works . . . ." (Pl.'s Compl. at ¶ 28; *see also* "Software License Agreement," attached to Pl.'s Compl. at Ex. B, ¶ 2.1). Several amendments were made to this licensing agreement over the course of those parties' professional relationship. (*See generally* Pl.'s Compl. at Exs. C and D).

Plaintiff has never been a Compendia employee. (Pl.'s Compl. at ¶¶ 36, 41). Nevertheless, from January 2006 until mid-2007, Plaintiff alleges that he continued to "develop and create software upgrades and improvements for the Oncomine software *for Compendia*." (Pl.'s Compl. at

2

¶ 31) (emphasis added).  Plaintiff alleges that this work was done "separate and distinct from" his employment at U-M.  (Pl.'s Compl. at ¶ 45).

Plaintiff claims that he is the author of what is referred to as "Oncomine 3.5," which is the subject of Plaintiff's claim of copyright protection.  (Pl.'s Compl. at ¶ 32).  Plaintiff alleges that he worked for Compendia by writing new software code because "Compendia made various and differing promises to [him] regarding how Compendia would compensate him for his work on the Oncomine software . . ." including "that he would receive stock in Compendia or a signing bonus."  (Pl.'s Compl. at ¶ 38).

Plaintiff alleges that he never received any compensation from Compendia for his work on the Oncomine software.  (Pl.'s Compl. at ¶ 33).  Plaintiff further alleges that he never entered into a written agreement with Compendia regarding his compensation for his work on the Oncomine software and that he never entered into an agreement with Compendia regarding the ownership of intellectual property rights concerning Oncomine.  (Pl.'s Compl. at ¶¶ 43, 44).

Plaintiff claims that Rhodes, on behalf of Compendia, approached him in September 2012 and offered to pay Plaintiff $25,000 in exchange for Plaintiff's irrevocable assignment of "any and all intellectual property rights" to Compendia.  (Pl.'s Compl. at ¶ 51, *see also* Pl.'s Compl. at Ex. H).  That offer letter, referred to as "Payment of Appreciation Bonus upon Change in Control," was signed by Rhodes on behalf of Compendia and refers to Plaintiff as an "independent contractor." (Pl.'s Compl. at Ex. H).

Plaintiff refused Compendia's offer.  (Pl.'s Compl. at ¶ 51, *see also* Pl.'s Compl. at Ex. H). Life Technologies later acquired Compendia in October 2012.  All Compendia shareholders consented to the acquisition.  (Pl.'s Compl. at Ex. G).

Plaintiff registered his alleged copyright in the Oncomine 3.5 software with the United States Copyright Office, which became effective on December 18, 2012. (Pl.'s Compl. at ¶ 53; *see also* Copyright Registration, Pl.'s Compl. at Ex. A). Plaintiff filed suit against Defendants on May 17, 2013, (Doc. #1), alleging: Count I - Copyright Infringement against Compendia; Count II - Copyright Infringement against Life Technologies, and Count III - Unjust Enrichment against Compendia. (Pl.'s Compl. at pp. 9-13).

In lieu of answering Plaintiff's Complaint, Defendants brought the present Motion to Dismiss Pursuant to FRCP 12(b)(6) on October 28, 2013 (Doc. #6). Plaintiff responded to Defendants' Motion (Doc. #9), Defendants replied (Doc. #10), and on January 9, 2014 this Court issued an Order Granting Plaintiff's Motion for Leave to File a Surreply (Doc. #15). Plaintiff filed a surreply shortly thereafter. (Doc. #16).

**STANDARD OF DECISION**

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and must accept all the factual allegations contained in the complaint as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

In order to survive a Rule 12(b)(6) motion to dismiss, Plaintiff's complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 557. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

Title 17 of the United States Code,[1] entitled "Copyrights," ("the Act") contains a comprehensive statutory scheme governing all aspects of the U.S. copyright system from creation to infringement.

"Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . ." 17 U.S.C. § 102 (a). Works of authorship include literary works, musical works, dramatic works, pictorial and graphic works, sculptural works, motion pictures, sound recordings, architectural works, etc. 17 U.S.C. § 102 (a) (1) - (8). Computer programs are considered literary works of authorship that may be entitled to copyright protection and may be protected from infringement by the Copyright Act. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 533 (6th Cir. 2004).

Generally, copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). A copyright owner has a number of exclusive rights related to the copyrighted work, *see* 17 U.S.C. § 106, and may sue an infringer to enforce his or her rights as copyright owner, *see* 17 U.S.C. § 501.

**1)   Has Plaintiff Stated A Plausible Claim Against Defendants For Copyright Infringement?**

In order for Plaintiff to succeed on his claim of copyright infringement, he must show that he is the owner of a valid copyright, and that Defendants copied constituent elements of his work

---

[1] 17 U.S.C. § 101, *et. seq.*

that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Defendants argue that Plaintiff is not the owner of a copyright in any version of Oncomine, including Oncomine 3.5, because it is either a "work made for hire" created within the scope of Plaintiff's employment at U-M or because Plaintiff did not have authorization to create derivative works of Oncomine 3.0 and was an infringer himself.

    **A.**    **Is Oncomine 3.5 A "Work Made For Hire" That Plaintiff Created Within The Scope Of His Employment At U-M?**

Defendants correctly point out, and Plaintiff does not deny, that Plaintiff's initial creation of Oncomine while he was an employee of U-M is a "work made for hire." The Copyright Act defines a "work made for hire" as

> (1) a work prepared by an employee within the scope of his or her employment; or
>
> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. For the purposes of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an "instructional text" is a literary, pictorial, or graphic work prepared or publication and with the purpose of use in systematic instructional activities.

17 U.S.C. § 101. "[A] work for hire can arise through one of two mutually exclusive means, one for employees and one for independent contractors . . . ." *Comm. for Creative Non-Violence v. Reid*, 490 U.S. 730, 743 (1989). Because Plaintiff initially created Oncomine as an employee of U-M and

within the scope of his employment at U-M, it follows that U-M owns the copyright in the initial version(s) of Oncomine, up to and including the copyrights in Oncomine 3.0, pursuant to 17 U.S.C. § 101(1).   This is a point on which the parties agree.

Instead, the parties dispute the ownership of the copyright in *subsequent* versions of Oncomine, i.e. Oncomine 3.5 and beyond, which Plaintiff claims he wrote for Compendia after it was formed.  (Pl.'s Compl. at ¶¶ 31-32).  Defendants argue that Plaintiff's work on Oncomine 3.5 also constitutes a "work made for hire" because Plaintiff was still a full-time employee at U-M when Oncomine 3.5 was created, and because U-M retained the right to create its own derivative works of Oncomine even after it granted Compendia a license to exploit Oncomine 3.0.  (Defs.' Reply at 2-3).

On the other hand, Plaintiff clearly alleges in his Complaint that he created Oncomine 3.5 *for Compendia*, and that after Compendia and U-M entered into a license agreement for Oncomine, he "did not work on any further development of or improvement to the Oncomine software as part of his employment at U of M."  (Pl.'s Compl. at ¶ 46).  Plaintiff appears to argue that although he was still employed by U-M when he wrote Oncomine 3.5, his doing so was no longer "within the scope of his employment" because he wrote it for Compendia outside of his duties at U-M.  (Pl.'s Compl. at ¶ 45).

This Court rejects Defendants' contention that Oncomine 3.5 was a "work made for hire" created for U-M's benefit.  While Plaintiff's initial work on Oncomine was clearly within the scope of his employment at U-M, he claims that his authorship of Oncomine 3.5 and beyond was separate and distinct from his U-M work and was done at the request of, and with the authorization of, Compendia.  Because this Court must accept all of Plaintiff's well-pleaded facts as true, this Court

finds that Plaintiff's Complaint states facts sufficient to defeat Defendants' claim that Oncomine 3.5 was a "work made for hire" for U-M's benefit.

> **B.  Has Plaintiff Stated Facts Showing He Had Authorization To Create Oncomine 3.5, A Derivative Work, Such That He May Own A Valid Copyright In Oncomine 3.5?**

Next, Defendants argue that if Plaintiff was not acting within the scope of his U-M employment when he created Oncomine 3.5, he still does not own a copyright in any version of Oncomine because he was not authorized by either Compendia or U-M to create his own derivative work(s) of Oncomine. (Defs.' Reply at 3). The Copyright Act defines a derivative work as

> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a derivative work.

17 U.S.C. § 101. "Thus, a derivative work must incorporate a substantial element of a preexisting work of authorship and recast, transform, or adapt those elements." *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 305 (S.D.N.Y. 2000).

For purposes of the present motion, the parties appear to agree that subsequent versions of Oncomine 3.0, i.e. Oncomine 3.5, are 'derivative works' within the meaning of the Act. Because a derivative work necessarily incorporates previously copyrighted material, "the author of a derivative work must have permission to make the work from the owner of the copyright in the underlying work . . . ." *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 523 (7th Cir. 2009). Once the prospective author of a derivative work has been granted permission to create the derivative work, his copyright interest in that work vests automatically upon its creation. *Id.*, *citing* 1 NIMMER

ON COPYRIGHT § 3.06 ("the right to claim copyright in a non-infringing derivative work arises by operation of law, not through authority from the copyright owner of the underlying work.").

Plaintiff appears to argue that he had Compendia's permission to create Oncomine 3.5, so he owns a copyright in that work "as a matter of law." Plaintiff reiterates his allegation that he was working *for* Compendia when he created the software at issue, (Pl.'s Surreply at 2), and maintains that he was authorized by Compendia to create subsequent versions of Oncomine. (Pl.'s Surreply at 2). Plaintiff further argues that he owns the copyright in the subject work(s) because the parties had no contractual written agreement indicating that the copyright in Oncomine 3.5 belonged to Compendia rather than Plaintiff. (Pl.'s Surreply at 2).

It is undisputed that Plaintiff was not an employee of Compendia at any time. Rhodes even referred to Plaintiff as an "independent contractor" in his offer letter to Plaintiff. (*See* Pl.'s Compl. at Ex. H). Also, for purposes of this motion, Defendants do not dispute that Plaintiff is the author of Oncomine 3.5. (Hearing Transcript, 1/23/14, at 2:3-7). Thus, in order for Compendia to show that it owns the copyright in Oncomine 3.5, it must show that the second "work made for hire" provision, 17 U.S.C. section 101(2),[2] has been met. *See Reid*, 490 U.S. at 753 ("Because [Respondent] was an independent contractor, whether "Third World America" is a work for hire depends on whether it satisfies the terms of § 101(2). This, petitioners cannot do. Thus, [Petitioner] is not the author of "Third World America" by virtue of the work for hire provisions of the Act."). To date, Defendants have made no such showing.

At this early stage of the litigation, it is much too early to tell whether Plaintiff's theory is

---

[2] *See* Section I, part A, *supra*, for the text of the "work made for hire" statute that applies to independent contractors. Generally speaking, the work must be specially commissioned and of a certain subject matter, and the agreement must be in writing. 17 U.S.C. § 101(2).

sound enough to prevail at trial. However, when accepting all of Plaintiff's factual allegations as true and construing the Complaint in Plaintiff's favor, this Court finds that Plaintiff has pleaded at least a *plausible* set of facts supporting his claim to ownership of the Oncomine 3.5 copyright. The U-M/Compendia license gave Compendia the right to sublicense the use of Oncomine for the purpose of making derivative works. (Pl.'s Compl. at Ex. B ¶ 2.1). Thus, it is at least plausible that Compendia granted Plaintiff authorization to create a derivative work using Oncomine 3.0. If Plaintiff had authorization to create Oncomine 3.5, his copyright in that work would vest automatically by operation of law, barring any other written agreement to the contrary. *See Schrock*, 586 F.3d at 523. Further, Compendia has come forth with no evidence or argument indicating that it owns the copyright in Oncomine 3.5. Based on the foregoing, this Court DENIES Defendants' Motion to Dismiss Counts I and II of Plaintiff's Complaint.

**2)    Does The Copyright Act Preempt Plaintiff's State Law Unjust Enrichment Claim?**

Plaintiff has pleaded a state law unjust enrichment claim against Compendia, arguing that Compendia "has never compensated [Plaintiff] for the benefit Compendia received from utilizing [Plaintiff's] copyrighted work." (Pl.'s Compl. at ¶ 82). Plaintiff's Complaint alleges in an earlier paragraph that

> Compendia made various and differing promises to [Plaintiff] regarding how Compendia would compensate him for his work on the Oncomine software including a promise that Compendia would assist [Plaintiff] in obtaining a new work visa that would allow [Plaintiff] to work for Compendia and that he would receive stock in Compendia or a signing bonus from Compendia for his work on the Oncomine software after Compendia obtained that visa.

(Pl.'s Compl. at ¶ 38).

Defendants argue that this Court should dismiss Plaintiff's state law unjust enrichment claim

because it is preempted by the Act, noting that "the Sixth Circuit has joined other circuits in holding that claims for unjust enrichment are preempted by the Copyright Act." (Defs.' Br. at 15, *quoting Diamond v. Gillis*, 357 F. Supp. 2d 1003, 1009 (E.D. Mich. Feb. 17, 2005) (Cohn, J.)).

Plaintiff responds that his unjust enrichment claim is based on an implied-in-fact contract, which in turn relies on Defendants' alleged promise to pay Plaintiff for use of his work, (Pl.'s Compl. at ¶¶ 38), and therefore Plaintiff's unjust enrichment claim avoids preemption because it requires proof of an "extra element" that his copyright infringement claims do not. (Pl.'s Resp. at 9-10).

The Act contains an express preemption provision that states:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). Section 301 makes clear that "[n]othing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to . . . activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . ." 17 U.S.C. § 301(b)(3).

Based on these statutes, courts have explained that "a state common law or statutory claim is preempted if: (1) the work is within the scope of the subject matter of copyright, as specified in 17 U.S.C. § 102, 103; and, (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001).

The "equivalency" requirement embedded in the Act's preemption provision asks whether the state common law or statutory right at issue asserts rights equal to the rights guaranteed to a copyright owner by section 106 of the Act.[3] If the state law right and the copyright completely overlap, the state law claim is preempted. If the state law right requires a plaintiff to prove an "extra element" in addition to the infringing act of reproduction, performance, distribution or display, and the extra element changes the nature of the action, then the state claim is not equivalent and not preempted. *See Taco Bell*, 256 F.3d at 455-56.

Plaintiff's unjust enrichment claim is based on a state common law right. Within the species of unjust enrichment claims lies two varieties: those premised on a contract implied-in-fact, and those premised on a contract implied-in-law. *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, 2008 WL 186367 at *4 (E.D. Mich. Jan. 18, 2008). For a plaintiff to prevail on a contract implied-in-law, he or she must show nothing more than the unauthorized use of his or her work. *See Taco Bell*, 256 F.3d at 459. In contrast, a plaintiff's prevailment on a contract implied-in-

---

[3] Section 106 of the Copyright Act, entitled "Exclusive rights in copyrighted works," states:
> Subject to sections 107 through 121, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
> (1) to *reproduce* the copyrighted work in copies or phonorecords;
> (2) to prepare *derivative works* based upon the copyrighted work;
> (3) to *distribute* copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to *perform* the copyrighted work publicly;
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to *display* the copyrighted work publicly; and
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. 106 (emphasis added).

fact depends on the establishment of "the extra element of a promise to pay for the use of the work which is implied from the conduct of the parties." *Id.* An unjust enrichment claim premised on an implied-in-fact contract is therefore not preempted by the Act. *Taco Bell*, 256 F.3d at 459 ("appellants' state law implied-in-fact contract claim is not preempted by the Copyright Act.").

This Court finds that Plaintiff's unjust enrichment claim is not preempted by the Act. While the Sixth Circuit has held that certain unjust enrichment claims are preempted, the Sixth Circuit has also clarified its statement to more accurately reflect the nuances inherent in preemption analysis. When considered in a light most favorable to the Plaintiff, this Court finds that his unjust enrichment claim is fairly characterized as an implied-in-fact contract claim; Plaintiff has plausibly alleged that Compendia promised to pay him for the use of his work, but failed to do so. (Pl.'s Compl. at ¶ 38). Plaintiff's claim thus requires him to prove an extra element beyond what the copyright infringement claims require him to establish. Therefore, this Court DENIES Defendants' Motion to Dismiss Count III of Plaintiff's Complaint.

**3)   Should This Court Dismiss Plaintiff's Statutory Damages And Attorney Fees Claim Against Defendant Life Technologies?**

In his Complaint, Plaintiff prays for relief in the form of, *inter alia*, statutory damages and attorney's fees from both Defendants. (Pl.'s Compl. p. 13). A prevailing plaintiff may elect to recover statutory damages rather than actual damages. 17 U.S.C. § 504(a). The Act also provides for the court's discretionary award of attorney's fees and costs to the prevailing party. 17 U.S.C. § 505. However, the Act limits the scope of these two sections by requiring the subject's copyright to be registered *prior* to the time that defendant's alleged infringement commenced. 17 U.S.C. §

412;[4] *see also Johnson v. Jones*, 149 F.3d 494, 504-505 (6th Cir. 1998). Infringement commences "when the first in a series of acts constituting infringement occurs." *Id.*

Plaintiff's Certificate of Registration for Oncomine has an effective date of December 18, 2012. (Pl.'s Compl. at Ex. A). The Certificate of Registration states that the work was completed in 2006, nearly six years before its copyright was registered. (Pl.'s Compl. at Ex. A). Defendants argue that Plaintiff's claim for statutory damages and attorney's fees is barred as a matter of law because Plaintiff alleges that all infringement commenced before his copyright was registered. (Defs.' Br. at 19).

Plaintiff has agreed to withdraw his statutory damages and attorney's fees claims against Compendia, (Pl.'s Resp. at 10; Hearing Trans. at 6:16-19), but argues that he has validly stated these claims as they pertain to Life Technologies because "it is an open question as to when Defendant Life Technologies commenced infringement." (Pl.'s Resp. at 11).

Life Technologies acquired Compendia, including all of its intellectual property rights, in October 2012. (Pl.'s Compl. at ¶ 52). Plaintiff argues that "[i]t is highly plausible that Life did not begin infringing immediately upon purchasing Compendia, but that there was a slight lag while assets were transferred." (Pl.'s Resp. at 11). Defendants respond that Life's infringement

---

[4] "In any action under this title . . . no award of statutory damages or of attorney's fees, as provided by section 504 and 505, shall be made for—

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."

17 U.S.C. § 412.

necessarily commenced before Plaintiff registered his copyright because, according to Plaintiff, Life "picked up where Compendia left off." (Defs.' Br. at p. 19).

Plaintiff also argues that even though Life may have engaged in some types of infringement before December 2012, it might not have commenced all of the alleged types of infringement before that time. (Pl.'s Resp. at 11). The Court understands Plaintiff to be arguing, for example, that even though Life might have commenced infringement by *reproduction* in November 2012, it might not have commenced infringement by *distribution* until after December 2012. Defendant argues that this position has long been rejected by the Sixth Circuit. (Hearing Trans. at 8:1-23; *see also* Defs.' Br. at 17-19, *citing to Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998); *Dorchen/Martin Assoc. Inc. v. Brook of Cheboygan*, 2013 U.S. Dist. LEXIS 4475 (E.D. Mich. Jan. 11, 2013) (Ludington, J.); *Masck v. Sports Illustrated*, 2013 U.S. Dist. LEXIS 81677 (E.D. Mich. June 11, 2013) (Drain, J.).[5]

The Court finds that Plaintiff has stated a plausible claim for statutory damages and attorney's fees against Defendant Life Technologies. Plaintiff has alleged that Life committed certain acts of infringement but has not specified when exactly Life's infringement began. Defendant has not attempted to do so either, but instead argues, in effect, that it must have begun sometime before December 2012. Plaintiff effectively argues that it is plausible that Life's infringement may not have commenced until after December 2012, so a dismissal of his statutory

---

[5] At oral argument, Defendants also argued that "Life acquired Compendia . . . so Life's alleged infringement is the same infringement and relates back." (Hearing Trans. at 7:23-24). Plaintiff replied that Life and Compendia are different business entities, so Life's infringement cannot be said to have commenced when Compendia's infringement commenced because Life did not acquire Compendia until October 2012. (Hearing Trans. at 9:4-12 and 9:17-25). Defendants made their "relation back" argument for the first time at oral argument; it appears nowhere in Defendants' opening brief or reply brief. The Court declines to consider an argument which has not been adequately briefed by the parties nor properly presented for consideration.

damages claim at this stage would be premature.

The parties have not provided this Court with any means by which to determine whether Life commenced its alleged infringement before or after December 2012. On that basis, this Court DENIES Defendant Life's Motion to Dismiss Plaintiff's statutory damages and attorney's fees claims at this time. This Court will, however, GRANT Defendant Compendia's Motion to Dismiss Plaintiff's statutory damages claim against Compendia because it is clear that Compendia's alleged infringement commenced prior to December 2012.

## CONCLUSION & ORDER

For the reasons set forth above, this Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6):

1) Defendant Compendia Bioscience, Inc.'s Motion to Dismiss Plaintiff's Statutory Damages and Attorney's Fees Claim Is GRANTED as to Defendant Compendia Bioscience, Inc. only;

2) Defendants' Motion to Dismiss is denied in all other respects.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: January 30, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 30, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

16