UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Vasudeva Mahavisno,

     Plaintiff,

v.                                                                          Case No.  13-12207
                                                                             Honorable Sean F. Cox

Compendia Bioscience, Inc., and Life
Technologies Corporation,

     Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS (Doc. #49) and DENYING PLAINTIFF'S
MOTION FOR ORDER FOR LIMITED RELIEF FROM PROTECTIVE ORDER (Doc.
#46)**

This is a copyright infringement case.  Plaintiff Vasudeva Mahavisno ("Plaintiff") alleges

that Defendant Compendia Bioscience, Inc. ("Compendia") and Defendant Life Technologies Corp.

("Life" or "Life Technologies") (collectively, "Defendants") infringed on his copyrights in three

pieces of computer software and breached contractual promises to pay him for his creation of the

software.  Defendants argue, among other things, that Plaintiff does not own a lawful copyright in

any version of the software and Plaintiff's breach of contract action is barred by the statute of

limitations.

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended

Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. #49) and Plaintiff's Motion

for Order for Limited Relief From The Protective Order (Doc. #46).  The motions have been fully

briefed by the parties, and the Court heard oral argument on Plaintiff's motion on January 15, 2015.

For the reasons set forth below, the Court shall GRANT IN PART and DENY IN PART Defendants' Motion to Dismiss, and DENY Plaintiff's Motion for Order for Limited Relief from Protective Order.

## BACKGROUND

### A.    Factual Background

In 2002, Plaintiff Vasudeva Mahavisno was a student at the University of Michigan ("U-M") working as a computer consultant in the Department of Pathology, under the direction of Professor Arul Chinnaiyan, M.D., Ph.D. ("Chinnaiyan").  (Amd. Compl. at ¶¶ 19, 20).

In 2002, Chinnaiyan and a Ph.D. candidate, Daniel Rhodes ("Rhodes"), conceived an idea for a computer program that would allow cancer researchers to process and analyze information over the internet.  (Amd. Compl. at ¶ 21).  Chinnaiyan and Rhodes approached Plaintiff about writing the software for their computer program, which was to be called "Oncomine."  (Amd. Compl. at ¶ 23). Plaintiff began writing the software in 2002 and finished the first version, entitled Oncomine 2.0, in November 2003.  (Amd. Compl. at ¶ 26).

After he graduated in 2003, Plaintiff continued to work at U-M as a full time employee. (Amd. Compl. at ¶ 25).  Plaintiff wrote additional code for, and made enhancements to, the Oncomine 2.0 software, which eventually culminated in the release of Oncomine 3.0 in 2005.  (Amd. Compl. at ¶¶ 28, 29).

In 2006, Chinnaiyan and Rhodes decided to form Compendia Bioscience, Inc.  (Amd. Compl. at ¶ 30).  U-M and Compendia entered into a licensing agreement, whereby U-M granted Compendia an exclusive license to sublicense, to create derivative works, and to use, market, distribute, and exploit Oncomine 3.0  (Amd. Compl. at ¶¶ 31, 32; *see* "Software License Agreement," attached to

Amd. Compl. at Ex. D).  Several amendments were made to this licensing agreement over the course of those parties' professional relationship.  (Amd. Compl. at ¶¶ 33, 34; Amd. Compl. at Exs. E and F).

Plaintiff has never been a Compendia employee.  (Amd. Compl. at ¶¶ 44, 50).  Nevertheless, from January 2006 until mid-2007, Plaintiff alleges that he "developed and created software upgrades and improvements for the Oncomine software *for Compendia* and *at Compendia's Request.*"  (Amd. Compl. at ¶ 35) (emphasis added).  Plaintiff alleges that this work was done separate and distinct from his employment at U-M.  (Amd. Compl. at ¶ 54).

Plaintiff is the author of three distinct pieces of computer software: 1) "Oncomine Software," 2) "Oncomine Version 4.0 Prototype," and 3) "Molecular Concepts Map Software."  (Amd. Compl. at ¶¶ 1-3; Copyright Registrations, attached to Amd. Compl. at Exs. A, B, and C).

Plaintiff alleges that he wrote additional software code for Compendia because "Compendia made various promises to [him] regarding how Compendia would compensate him for use of his work including a promise that he would receive an ownership interest in Compendia commensurate with his contributions to the enterprise, and a signing bonus."  (Amd. Compl. at ¶ 46).  Plaintiff further alleges that "[t]hese promises include the following: the promise of a salary; the promise of a bonus; the promise of stock options; and the promise of a percentage interest in Compendia." (Amd. Compl. at ¶ 89).

Plaintiff never received any compensation from Compendia for his creation of his copyrighted works.  (Amd. Compl. at ¶ 43).  Plaintiff never entered into a written agreement with Compendia regarding his compensation for his work on the Oncomine software and he never entered into an agreement with Compendia regarding the ownership of intellectual property rights concerning

3

the Oncomine software.  (Amd. Compl. at ¶¶ 52, 53).

Plaintiff claims that Rhodes, on behalf of Compendia, approached him in September 2012 and offered to pay Plaintiff $25,000 in exchange for Plaintiff's irrevocable assignment to Compendia of "any and all intellectual property rights" in the Oncomine software.  (Amd. Compl. at ¶ 60; Sept. 24, 2012 Letter, Amd. Compl. at Ex. J).  That offer letter, titled "Payment of Appreciation Bonus upon Change in Control," refers to Plaintiff as an "independent contractor."  The Sept. 24, 2012 Letter was signed by Rhodes on behalf of Compendia.  (Amd. Compl. at Ex. J).

Plaintiff refused Compendia's offer.  (Amd. Compl. at ¶ 60).  Life Technologies later acquired Compendia in October 2012.  (Amd. Compl. at ¶ 61).

Plaintiff registered his alleged copyright in the Oncomine Software with the United States Copyright Office, which became effective on December 18, 2012. (Amd. Compl. at ¶ 62; Oncomine Software Registration, Amd. Compl. at Ex. A).  Plaintiff later filed a Supplemental Registration to the Oncomine Software Registration on June 5, 2014 (Defs. Mo., Doc. #49 at Ex. 1), although the purpose and effect of this supplement is disputed.

Plaintiff registered his copyright in the Oncomine 4.0 Prototype on September 10, 2014. (Amd. Compl. at ¶ 63; Amd. Compl. at Ex. B).  Plaintiff also registered his copyright in the Molecular Concepts Maps Software on September 10, 2014.  (Amd. Compl. at ¶ 64; Amd. Compl. at Ex. C).

## B.   Procedural History

Plaintiff filed suit against Defendants on May 17, 2013, (Complaint, Doc. #1), alleging: Count I - Copyright Infringement against Compendia; Count II - Copyright Infringement against Life Technologies, and Count III - Unjust Enrichment against Compendia.   (Compl., Doc. #1 at pp. 9-

4

13).

In lieu of answering Plaintiff's Complaint, Defendants filed a Motion to Dismiss Pursuant to FRCP 12(b)(6) on October 28, 2013 (Doc. #6).  On January 30, 2014, this Court granted Defendants' motion to the extent that it sought to bar Plaintiff from seeking statutory damages and attorney's fees against Compendia (Jan. 30, 2014 Opinion and Order, Doc. #19 at 16) and denied Defendants' motion in all other respects.  (Doc. #19 at 16).

On October 10, 2014, Plaintiff filed a First Amended Complaint, (Amd. Compl., Doc. #45), alleging: Count I - Copyright Infringement against Compendia; Count II - Copyright Infringement against Life Technologies, and Count III - Breach of Implied-in-Fact Contract against Compendia. (Doc. #45).

Again, in lieu of filing an answer to Plaintiff's Amended Complaint, Defendants have filed another Motion to Dismiss Pursuant to FRCP 12(b)(6).  (Doc. #49).  Plaintiff has responded, (Doc. #58), and Defendants have replied.  (Doc. #61).

## STANDARD OF DECISION

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and must accept all the factual allegations contained in the complaint as true.  *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

In order to survive a Rule 12(b)(6) motion to dismiss, Plaintiff's complaint need contain only "enough facts to state a claim for relief that is plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to

5

relief.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Twombly*, 550 U.S. at 557.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."   *Id.* at

679.

## ANALYSIS

**1)   Should This Court Dismiss Plaintiff's Breach of Implied-In-Fact Contract Claim?**

Plaintiff, in his original Complaint, stated a claim for Unjust Enrichment.  (Doc. #1 at Count

III).  In that Complaint, Plaintiff alleged that "Compendia made various and differing promises to

[Plaintiff] regarding how Compendia would compensate him for his work on the Oncomine

software."  (Compl., Doc. #1 at ¶ 38).  Plaintiff alleged that "Compendia has wrongfully benefitted

through the use of Mahavisno's copyrighted work" (Compl., Doc. #1 at ¶ 79), "Compendia has never

compensated Mahavisno for the benefit Compendia received from utilizing Mahavisno's copyrighted

work," (Compl. at ¶ 82), and that "it would be inequitable for Compendia to retain the benefit

conferred upon it by Mahavisno, without paying Mahavisno for the value of the benefit."  (Compl.

at ¶ 83).

Now, in Plaintiff's First Amended Complaint, Plaintiff has pleaded a claim against

Compendia entitled "Breach of Implied-In-Fact Contract."  (Amd. Compl., Doc. #45 at Count III).

In this Amended Complaint, Plaintiff alleges that Compendia "made various promises to pay for use

of [his] works and to induce [him] to produce and continue producing source code for Compendia.

These promises include the following: the promise of a salary; the promise of a bonus; the promise

of stock options; and the promise of a percentage interest in Compendia."  (Amd. Compl. at ¶ 89).

Plaintiff alleges that he "reasonably relied on these promises and, as a result, produced source code

6

for Compendia . . ." (Amd. Compl. at ¶ 90). Plaintiff further alleges that "Compendia should have expected that these promises would induce [him] to continue to work on the Oncomine source code . . ." (Amd. Compl. at ¶ 91). Accordingly, Plaintiff claims that "Compendia has wrongfully benefitted through the use of . . . Plaintiff's Copyrighted Works . . ." (Amd. Compl. at ¶ 92) and "[i]njustice can only be avoided by enforcing the promises made by Compendia." (Amd. Compl. at ¶ 96).

"A claim for unjust enrichment is the equitable counterpart of a legal claim for breach of contract." *Romeo Inv. Ltd. v. Michigan Consol. Gas Co.*, 2007 WL 1264008, at *8 (Mich. Ct. App. May 1, 2007). Thus, in amending his Complaint, it appears that Plaintiff has slightly altered his third claim for relief.

### A. Has Plaintiff Failed To State A Claim For Breach of Implied-in-Fact Contract?

Defendants argue that Plaintiff has failed to state a claim for breach of implied-in-fact contract because Plaintiff has failed to allege that the parties reached a "meeting of the minds." (Defs. Mo. at 10 fn 3, citing *Employment Reinsurance Corp. v. Woodland Equip. Inc.*, 1996 Mich. App. LEXIS 1291 *7, *9 (1996) (attached to Defs. Mo at Ex. 2).

Plaintiff responds that Defendants raised, and this Court rejected, this argument in regards to Defendants' first motion to dismiss. (Pl. Resp. at 13). Plaintiff urges this Court to reject it again, and conclude that Plaintiff has stated a claim for breach of implied-in-fact contract. Plaintiff also responds that "Plaintiff's creation and delivery and Compendia's acceptance of that code demonstrates the meeting of the minds that Defendants' [sic] allege is missing." (Pl. Resp. at 14).

First, the issue of whether Plaintiff adequately alleged a "meeting of the minds" was never raised in the context of the first motion to dismiss in this case. Rather, in their first motion to

dismiss, Defendants argued that Plaintiff's unjust enrichment claim was preempted by the Copyright Act. (Jan. 30, 2014 Opinion and Order, Doc. #19, at 10-13). In considering that argument, this Court stated:

> This Court finds that Plaintiff's unjust enrichment claim is not preempted by the Act . . . When considered in a light most favorable to the Plaintiff, this Court finds that his unjust enrichment claim is fairly characterized as an implied-in-fact contract claim; Plaintiff has plausibly alleged that Compendia promised to pay him for the use of his work, but failed to do so . . . Plaintiff's claim thus requires him to prove an extra element beyond what the copyright infringement claims require him to establish. Therefore, this Court DENIES Defendants' Motion to Dismiss Count III of Plaintiff's Complaint.

(Jan. 30, 2014 Opinion and Order, Doc. #19, at 10-13). Additionally, as discussed above, it appears that Plaintiff has modified his original claim for relief stemming from the alleged promises Compendia made to him. Accordingly, the Court shall consider Defendants' argument that Plaintiff has failed to allege a "meeting of the minds," as required to plead a breach of implied contract claim, without reference to the Court's January 30, 2014 Opinion and Order.

"A contract is implied-in-fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction." *Ford v. Blue Cross & Blue Shield of Michigan*, 150 Mich. App. 462, 466 (1986). "An implied-in-fact contract requires a meeting of the minds, though it is established through words or conduct." *Van Dyke Partners, L.L.C. v. City of Warren*, 2010 WL 5383519, at *3 (Mich. Ct. App. Dec. 28, 2010), citing *City of Detroit v. City of Highland Park*, 326 Mich. 78, 100 (1949).

Accepting all factual allegations as true and construing them in the light most favorable to

8

Plaintiff, the Court finds that Plaintiff has adequately alleged that the parties had a meeting of the minds. Plaintiff alleges that Defendants made several promises to him in exchange for his further development of the Oncomine software. (Amd. Compl. at ¶¶ 89, 90). It appears undisputed both that Plaintiff made further developments to the Oncomine software, and that Compendia received and implemented Plaintiff's developments to the Oncomine software. The Court finds it plausible that the "meeting of the minds" concerning Plaintiff's alleged implied-in-fact contract may be established through Compendia's alleged words and conduct, i.e. promising to compensate Plaintiff for his work and then receiving and implementing Plaintiff's work after he completed it. *See Van Dyke Partners*, 2010 WL 5383519 at *3. Accordingly, the Court finds that Plaintiff has plausibly alleged a "meeting of the minds" as required to adequately plead a breach of implied-in-fact contract claim.

## B.      Is Plaintiff's Breach of Implied-In-Fact Contract Claim Barred By The Statute Of Limitations?

Defendants argue that Plaintiff's breach of contract claim is barred by Michigan's six year statute of limitations applicable to such claims. M.C.L. § 600.5807(8). Defendants maintain that Plaintiff's breach of contract claim accrued in March of 2007, after Plaintiff stopped working on Oncomine and after Plaintiff discovered that Defendants' immigration attorney would no longer be pursuing Plaintiff's new work visa.

Plaintiff agrees that Michigan law provides a six year statute of limitations for his breach of contract claim. However, Plaintiff disputes that his contract claim accrued in March of 2007. Plaintiff maintains that his loss accrued, and thus his breach of contract action accrued, in 2012 when Life acquired Compendia. Plaintiff argues that "Compendia only surrendered its ability to deliver

on its promise to give Plaintiff ownership in Compendia" when Compendia was acquired by Life in October 2012.  (Pl. Resp., Doc. #58 at 15).

Under both Michigan and federal procedure, statute of limitations is an affirmative defense. *Rembisz v. Lew*, 2014 WL 5420784, at *2 (6th Cir. Oct. 27, 2014);  *Lancaster v. Wease*, 2010 WL 3767569, at *2 (Mich. Ct. App. Sept. 28, 2010).  The burden of proving an affirmative defense rests with the defendant.  *Messenger v. Consumer & Indus. Servs.*, 238 Mich. App. 524, 536 (1999).  "A 12(b) motion to dismiss on the basis of an affirmative defense can be granted only where the defense appears clearly on the face of the complaint."  *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 551 F. Supp. 580, 591 (S.D. Ohio 1982), citing *McNally v. American States Insurance Co.*, 382 F.2d 748 (6th Cir.1967) and Wright & Miller Federal Procedure and Practice: Civil § 1357.

The statute of limitations on a particular claim or cause of action runs "from the time the claim accrues."  M.C.L. § 600.5827.  The statute of limitations for bringing a breach of contract action is six years.  M.C.L. § 600.5807(8).  Generally, for a breach of contract claim, "[a] cause of action accrues when a breach of contract occurs, namely, when the promisor fails to perform under the contract."  *Vandendries v. Gen. Motors Corp.*, 130 Mich. App. 195, 201 (1983).

The crucial point in time is the date of the breach, not the date that the breach is discovered. *Currithers v. FedEx Ground Package Sys., Inc.*, 2012 WL 458466, at *4 (E.D. Mich. Feb. 13, 2012), quoting *Mich. Millers Mut. Ins. Co. v. W. Detroit Bldg. Co., Inc.*, 196 Mich. App. 367 (Mich. Ct. App. 1992).  The date on which damages result should not be considered for limitations purposes either.  *See* M.C.L. § 600.5827 (the claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results.").  These rules apply to express and implied contracts alike.  *Currithers*, 2012 WL 458466 at *4, citing *Vutci v. Indianapolis Life Ins.*

10

*Co.*, 157 Mich. App. 429, 403 N.W.2d 157, 164 (Mich. Ct. App. 1987).

Plaintiff originally filed this action on May 17, 2013 (Doc. #1). Thus, in order for the Plaintiff's breach of implied-in-fact contract claim to be timely, Plaintiff's claim must have accrued on or after May 17, 2007. In other words, Defendants must have breached their duties under the implied-in-fact contract on or after May 17, 2007 in order for Plaintiff's breach of contract claim to have accrued within the limitations period.

From January of 2006 until "about Mid-February 2007," Plaintiff authored code for Compendia. (Amd. Compl. at ¶¶ 30, 36). Plaintiff alleges that Compendia "made various promises to pay for use of [his] works and to induce [him] to produce and continue producing source code for Compendia." (Amd. Compl. at ¶ 89). Plaintiff claims that, during this time period, "Compendia was unable to hire [him] . . . because he was working for U-M pursuant to a H1-B visa that only permitted him to work for the visa-sponsoring employer." (Amd. Compl. at ¶ 35). Plaintiff also states that in "Mid-March 2007, [he] learned that Compendia directed its immigration attorney to stop working on the H1-B visa application for his new work visa." (Amd. Compl. at ¶ 48). Nevertheless, Plaintiff "received his Employment Authorization Card" in November 2007 and his Permanent Resident Card ("Green Card") in March 2012—"both of which would allow him to work in the United States for any employer." (Amd. Compl. at ¶ 49). Ultimately, Plaintiff never became an employee of Compendia. (Amd. Compl. at ¶ 50).

Defendants argue that, if any implied contract existed, the alleged breach occurred in mid-March 2007 when Compendia instructed its immigration attorney to stop working on Plaintiff's new H1-B visa. Defendant appears to be arguing that once Plaintiff learned that Compendia was not seeking an H1-B visa on Plaintiff's behalf, Plaintiff should have inferred that Compendia would not

11

follow through on any of its employment-related promises either.

The Court finds that it is not clear from the face of the Amended Complaint when exactly Compendia breached the alleged promises it made to Plaintiff. Plaintiff alleges that he was promised that he would receive a salary, a bonus, stock options, and a percentage ownership interest in Compendia. (Amd. Compl. at ¶ 89). Plaintiff does not allege a time frame during which Compendia was obligated to fulfill these alleged promises, although it appears undisputed that Compendia never fulfilled any of them. Without any allegations to establish when Compendia's performance under the implied-in-fact contract was due, it is exceedingly difficult to determine when Compendia breached the contract and, accordingly, when the six year statute of limitations on Plaintiff's breach of contract action began to run.

A statute of limitations defense is an affirmative defense that Defendant must prove. In order for the Court to grant Defendants' current 12(b)(6) motion to dismiss based on a statute of limitations defense, the Court must find that the statute of limitations defense appears clearly on the face of the complaint. Because the allegations do not establish when Compendia's performance was due under the implied-in-fact contract, the Court finds that the face of the Amended Complaint does not establish exactly when Compendia's alleged breach of that contract occurred. Accordingly, the Court finds that the facts supporting Compendia's statute of limitations defense do not appear on the face of the Amended Complaint. Defendants' Motion to Dismiss Count III of Plaintiff's Amended Complaint is DENIED.

12

**2)    Should The Court Dismiss Plaintiff's Copyright Infringement Claims Against
Defendants?**

Title 17 of the United States Code,[1] entitled "Copyrights," ("the Act") contains a
comprehensive statutory scheme governing all aspects of the U.S. copyright system from creation
to infringement.

"Copyright protection subsists . . . in original works of authorship fixed in any tangible
medium of expression . . . ."  17 U.S.C. § 102 (a).  Works of authorship include literary works,
musical works, dramatic works, pictorial and graphic works, sculptural works, motion pictures,
sound recordings, architectural works, etc.  17 U.S.C. § 102 (a) (1) - (8).  Computer programs are
considered literary works of authorship that may be entitled to copyright protection and may be
protected from infringement by the Copyright Act. *Lexmark Int'l, Inc. v. Static Control Components,
Inc.*, 387 F.3d 522, 533 (6th Cir. 2004).

Generally, copyright ownership "vests initially in the author or authors of the work."  17
U.S.C. § 201(a).  A copyright owner has a number of exclusive rights related to the copyrighted
work, *see* 17 U.S.C. § 106, and may sue an infringer to enforce his or her rights as copyright owner,
*see* 17 U.S.C. § 501.

In order for Plaintiff to succeed on his claim of copyright infringement, he must show that
he is the owner of a valid copyright, and that Defendants copied constituent elements of his work
that are original.  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Defendants argue that Plaintiff has failed to plead a plausible claim for copyright
infringement because he has not, and cannot, allege that he had permission to create derivative works

---

[1]17 U.S.C. § 101, *et seq.*

13

of Oncomine.  Thus, Defendants claim, Plaintiff was an unlawful infringer of Oncomine and does not get copyright protection for derivative works created therefrom.

Again, Plaintiff argues that the Court already rejected this argument in the course of adjudicating Defendants' first motion to dismiss and should continue to do so here.

The Court agrees with Plaintiff that Defendants' argument regarding Plaintiff's lack of authorization to create derivative works of the Oncomine software has been discussed at length, and rejected, by this Court in its January 30, 2014 Opinion and Order.  In that Opinion, the Court stated:

> Defendants argue that . . . Plaintiff . . . does not own a copyright in any version of Oncomine because he was not authorized by either Compendia or U-M to create his own derivative work(s) of Oncomine.  (Defs.' Reply at 3).  The Copyright Act defines a derivative work as
>
>> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a derivative work.
>
> 17 U.S.C. § 101.  "Thus, a derivative work must incorporate a substantial element of a preexisting work of authorship and recast, transform, or adapt those elements." *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 305 (S.D.N.Y. 2000).
> For purposes of the present motion, the parties appear to agree that subsequent versions of Oncomine 3.0, i.e. Oncomine 3.5, are 'derivative works' within the meaning of the Act.  Because a derivative work necessarily incorporates previously copyrighted material, "the author of a derivative work must have permission to make the work from the owner of the copyright in the underlying work . . . ." *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 523 (7th Cir. 2009). Once the prospective author of a derivative work has been granted permission to create the derivative work, his copyright interest in that work vests automatically upon its creation.  *Id.*, *citing* 1 NIMMER ON COPYRIGHT § 3.06 ("the right to claim copyright in a non-infringing derivative work arises by operation of law, not through authority from the copyright owner of the underlying work.").
> Plaintiff appears to argue that he had Compendia's permission to create

Oncomine 3.5, so he owns a copyright in that work "as a matter of law." Plaintiff reiterates his allegation that he was working *for* Compendia when he created the software at issue, (Pl.'s Surreply at 2), and maintains that he was authorized by Compendia to create subsequent versions of Oncomine. (Pl.'s Surreply at 2). Plaintiff further argues that he owns the copyright in the subject work(s) because the parties had no contractual written agreement indicating that the copyright in Oncomine 3.5 belonged to Compendia rather than Plaintiff. (Pl.'s Surreply at 2).

It is undisputed that Plaintiff was not an employee of Compendia at any time. Rhodes even referred to Plaintiff as an "independent contractor" in his offer letter to Plaintiff. (*See* Pl.'s Compl. at Ex. H). Also, for purposes of this motion, Defendants do not dispute that Plaintiff is the author of Oncomine 3.5. (Hearing Transcript, 1/23/14, at 2:3-7). Thus, in order for Compendia to show that it owns the copyright in Oncomine 3.5, it must show that the second "work made for hire" provision, 17 U.S.C. section 101(2), has been met. *See Reid*, 490 U.S. at 753 ("Because [Respondent] was an independent contractor, whether "Third World America" is a work for hire depends on whether it satisfies the terms of § 101(2). This, petitioners cannot do. Thus, [Petitioner] is not the author of "Third World America" by virtue of the work for hire provisions of the Act."). To date, Defendants have made no such showing.

At this early stage of the litigation, it is much too early to tell whether Plaintiff's theory is sound enough to prevail at trial. However, when accepting all of Plaintiff's factual allegations as true and construing the Complaint in Plaintiff's favor, this Court finds that Plaintiff has pleaded at least a *plausible* set of facts supporting his claim to ownership of the Oncomine 3.5 copyright. The U-M/Compendia license gave Compendia the right to sublicense the use of Oncomine for the purpose of making derivative works. (Pl.'s Compl. at Ex. B ¶ 2.1). Thus, it is at least plausible that Compendia granted Plaintiff authorization to create a derivative work using Oncomine 3.0. If Plaintiff had authorization to create Oncomine 3.5, his copyright in that work would vest automatically by operation of law, barring any other written agreement to the contrary. *See Schrock*, 586 F.3d at 523. Further, Compendia has come forth with no evidence or argument indicating that it owns the copyright in Oncomine 3.5. Based on the foregoing, this Court DENIES Defendants' Motion to Dismiss Counts I and II of Plaintiff's Complaint.

(Jan. 30, 2014 Opinion and Order, Doc. #19 at 8-10).

Defendants argue that this motion to dismiss is different than its prior motion because it is based on different allegations and different registered copyrights. (Defs. Reply at 5). Thus, Defendants argue, the Court should not rely on its Jan. 30, 2014 Opinion and Order in resolving this issue. Yet, Defendants have not pointed to any new factual allegations in the Amended Complaint

that should alter this Court's conclusion that Plaintiff has pleaded a plausible claim for copyright infringement.  Nor has the Court's review of the Amended Complaint uncovered any new factual allegations that would undermine this Court's January 30, 2014 Opinion and Order.

It is true that, since the filing of the original complaint, Plaintiff has registered two new copyrights in derivative works of Oncomine and attached those registrations to the Amended Complaint.  However, Defendants have not described *how* the inclusion of additional registered copyrights requires dismissal of the infringement claims now where the Court found it was unwarranted before.  The Court finds that the Amended Complaint has not changed the landscape of this case such that the "permission to create derivative works" issue must be evaluated anew. Therefore, based on the analysis contained in the Court's Jan. 30, 2014 Opinion and Order, the Court continues to find that Plaintiff has plausibly alleged that he had permission to derivative works of Oncomine.  Accordingly, the Court shall DENY Defendants' Motion to Dismiss Counts I and II of the Amended Complaint.[2]

_____

[2] Defendants' cited case on this issue is *Pickett v. Prince*, 52 F. Supp. 2d 893 (N.D. Ill. 1999), aff'd in part, *Pickett v. Prince*, 207 F.3d 402 (7th Cir. 2000).  *Pickett* was decided on a motion for summary judgment.  *Id.* at 894.  In that case, plaintiff created a guitar in the shape of the identifying symbol used by the artist formerly known as Prince.  *Id.* at 895-96.  Plaintiff then tried to sell the guitar to Prince.  *Id.*  Prince allegedly refused to purchase plaintiff's guitar, but was later seen using a similar symbol-shaped guitar to the one plaintiff created.  *Id.* at 896. Plaintiff sued Prince for copyright infringement.  Plaintiff appeared to agree that he did not have authorization to make a derivative work of Prince's copyrighted symbol, but instead argued that a different standard applies.  *Id.* at 897, 901-02.  The court rejected plaintiff's position, and held that "[p]laintiff's copyright in the Symbol-guitar is invalid because he lacks the necessary authorization from [defendant] for use of the Symbol."  *Id.* at 907.  The Court finds that *Pickett* is easily distinguishable—first, because it was decided at the summary judgment stage; second, because in *Pickett*, plaintiff did not even appear to allege or try to prove that he had defendant's authorization to use the underlying copyrighted work to create a derivative work.  To the contrary, Plaintiff alleges that Compendia had an exclusive license from U-M to create derivative works, and Plaintiff "developed and created software upgrades and improvements for the Oncomine software for Compendia and at Compendia's request."  (Amd. Compl. at ¶ 35).  As

**3)    Should This Court Dismiss Plaintiff's Statutory Damages And Attorney Fees Claim Against Defendant Life Technologies?**

In his Amended Complaint, Plaintiff prays for relief in the form of, *inter alia*, "the maximum statutory damages recoverable (should Plaintiff elect to receive statutory damages from Life Technologies . . .) pursuant to 17 U.S.C. § 504" and "increased statutory damages for willful infringement pursuant to 17 U.S.C. § 504" from Life Technologies. (Amd. Compl., Prayer for Relief at ¶¶ A and B).

A prevailing plaintiff may elect to recover statutory damages rather than actual damages. 17 U.S.C. § 504(a). The Act also provides for the court's discretionary award of attorney's fees and costs to the prevailing party. 17 U.S.C. § 505. However, the Act limits the scope of these two sections by requiring the subject's copyright to be registered *prior* to the time that defendant's alleged infringement commenced. 17 U.S.C. § 412; see also *Johnson v. Jones*, 149 F.3d 494, 504-505 (6th Cir. 1998). Infringement commences "when the first in a series of acts constituting infringement occurs." *Id.*

Statutory damages and attorney's fees as related to Compendia's conduct do not appear to be at issue because Plaintiff concedes that he has not asked for them in his Amended Complaint. (Pl. Resp. at 18). Defendants argue that Plaintiff's claims for statutory damages and attorney's fees from Life Technologies are also barred because all of Life's alleged acts of infringement started before any of his copyrights were registered.

Defendants sought dismissal of Plaintiff's statutory damages and attorney's fees claims against Life in its first motion to dismiss. This Court declined to dismiss or strike these claims

discussed above, the Court finds that Plaintiff has plausibly alleged that he had authorization from Compendia to create Oncomine-derivative works.

17

because "[t]he parties [had] not provided this Court with any means by which to determine whether Life commenced its alleged infringement before or after December 2012 [the effective date of Plaintiff's registered copyright]." (Jan. 30, 2014 Opinion and Order, Doc. #19, at 16).

Plaintiff has applied for, and received, two additional copyrights since his first complaint was filed. (*See* Amd. Compl. at Exs. B and C). These two additional registrations have effective dates of September 10, 2014. (*Id.*). Plaintiff now has three registered copyrights: 1) Copyright in Oncomine Software, dated December 18, 2012, attached to Amd. Compl. as Ex. A; 2) Copyright in Oncomine 4.0 Prototype, dated September 10, 2014, attached to Amd. Compl. at Ex. B; and 3) Copyright in Molecular Concepts Maps Software, dated September 10, 2014, attached to Amd. Compl. at Ex. C.

Plaintiff is not seeking statutory damages and attorney's fees against Life in relation to his Copyrights in the Oncomine 4.0 Prototype and Molecular Concepts Maps Software. (Pl. Resp. at p. 18). Accordingly, Defendants' Motion to Dismiss and/or Strike Plaintiff's Amended Complaint is GRANTED TO THE EXTENT THAT the Amended Complaint requests statutory damages and attorney's fees related to Life's infringement of the Oncomine 4.0 Prototype and Molecular Concepts Maps Software.

However, the parties still dispute whether statutory damages and attorney's fees are available to Plaintiff in regards to Life's alleged infringement of the Oncomine Software. (Amd. Compl. at Ex. A). Unlike when Defendants filed their first motion to dismiss, the effective date of Plaintiff's registration in the Oncomine Software is now a point of contention that must be addressed.

Plaintiff's copyright for the Oncomine Software (Copyright Cert. of Registration No. Txu 1-843-125) has an effective date of December 18, 2012. (Amd. Compl. at Ex. A). In June of 2014,

18

Plaintiff filed a Supplemental Registration to his original registration for the Oncomine Software (attached to Defs. Mo. at Ex. 1).  Defendants allege that this Supplemental Registration changed the content of the subject work, and therefore the new effective date of registration for the Oncomine Software coincides with the effective date of the Supplemental Registration, to wit, June 5, 2014. (Defs. Mo. at 13-14, citing *Schiffer Publishing, Ltd. v. Chronicle Books, LLC*, 2005 WL 67077 at *3-4 (E.D. Pa. 2005) (finding that, when a purported "supplemental" registration changes the content of the prior works, it is not an appropriate supplemental registration pursuant to 37 C.F.R. 201.5(b)(2)(iii),[3] and the effective date of the registration therefore becomes the date of the "supplemental" registration)).

Plaintiff appears to agree that if a supplemental registration changes the content of the subject work, then the effective date does not relate back to the original registration.  Instead, Plaintiff denies that his supplemental registration changed the content of the Oncomine software.  Plaintiff responds that his Supplemental Registration was filed only to clarify that the subject work, the "Oncomine Software," is a derivative work.  (Pl. Resp. at 19).  Plaintiff maintains that it was "an administrative change only."  (*Id.*).  Thus, Plaintiff urges, the effective registration date of the Oncomine Software registration has not changed.

---

[3] 37 C.F.R. 201.5(b)(2)(iii) states:

iii) Supplementary registration is not appropriate:

 . . .

       (B) To correct errors in statements or notices on the copies of phonorecords of a work, or to reflect changes in the content of a work . . . .

37 C.F.R. § 201.5.

Defendants have not countered Plaintiff's argument that his Supplemental Registration to the Oncomine Software did not change the content of the protected work. Therefore, the Court finds that the effective date of registration for the Oncomine Software is December 18, 2012. (Amd. Compl. at Ex. A). Further, an examination of the Supplemental Registration (Defs. Mo. at Ex. 1) shows, in the "Amplified Information and Explanation of Information" portion of the form, that Plaintiff filed the supplemental registration to correct a mistake on the original registration and designate the Oncomine Software as a derivative work. (Defs. Mo. at Ex. 1). Without more, it does not appear that the content of the Oncomine Software, registered on December 18, 2012, was altered.

Because the effective registration date of Plaintiff's copyright in the Oncomine Software is still December 18, 2012, the parties are in the same position they were in when the first motion to dismiss was filed. The exact commencement date of Life's infringing activities is still indiscernible from the pleadings, at least in relation to the Oncomine Software. As such, it is unclear whether Life's alleged infringement of the Oncomine Software occurred before or after its effective registration date. Therefore, the Court shall DENY Defendants' Motion to Dismiss and/or Strike Plaintiff's Amended Complaint as it relates to statutory damages and attorney's fees claims concerning Life's infringement of Plaintiff's Oncomine Software.

### 4) Should The Court Grant Plaintiff's Motion for Order for Limited Relief From Stipulated Protective Order?

On March 17, 2014, this Court entered a stipulated Protective Order in this case. (Doc. #30). The Protective Order provides that the parties may designate certain discovery as "Confidential" or "Highly Confidential — Attorneys' Eyes Only." (Doc. #30 at 3). "Highly Confidential — Attorneys' Eyes Only" material is defined as

20

> information . . . or tangible things that are extremely sensitive — such as Trade
> Secrets, Source Code . . . and whose disclosure to any person other than the parties'
> respective Counsel, as set forth in section 7.2 below, would create a substantial risk
> of serious injury that could not be avoided by less restrictive means.

(Doc. #30 at 3).  "Confidential" material is defined as

> information . . . or tangible things that qualify for protection under standards
> developed under Fed. R. Civ. P. 26(c) which shall only be disclosed to the parties to
> this action and their respective Counsels, as set forth in section 7.1 below.  Examples
> of such information include . . . (i) sales, marketing, or product or service
> development strategies, tactics, or plans; (ii) financial data; (iii) costs of doing
> business; (iv) customer lists; (v) business agreements and contracts; (vi) licensing
> negotiations and agreements; and (vi) [sic] third party documents covered by an
> obligation of confidentiality.

(Doc. #30 at 3).

Defendants produced its source code and related documentation to Plaintiff with the designation "Attorneys' Eyes Only."  (Pl. Mo., Doc. #46, at 1).  This designation prevents Plaintiff Vasudeva Mahavisno from viewing or reviewing the source code produced.  (Pl. Mo. at 1).

Plaintiff avers that it is necessary for him to be able to view the designated source code in order to compare Defendants' code to the code he authored to determine if copyright infringement occurred.  (Pl. Mo. at 1).  Apparently, Plaintiff intends to testify regarding his comparison of the two sets of code.  (Pl. Mo. at 5).  Plaintiff also claims that review of Defendants' source code is relevant to his state law breach of contract claim.

Plaintiff states that there is no risk of injury to Defendants if he is allowed to view this source code because he is not a competitor of Compendia, and has no interest in using the source code for his own benefit.  Therefore, Plaintiff requests that this Court enter an Order removing the "Attorneys' Eyes Only" designation from the source code at issue and requiring the parties to treat it only as "Confidential" material.  (Pl. Mo. at 1).

21

Defendants respond that the Attorneys' Eyes Only designation is appropriate and necessary, and should not be removed by the Court. Defendants point to the text of the stipulated Protective Order itself, by which the parties agreed that source code would be designated as such. (Protective Order, Doc. #30; Defs. Resp. at 4). Defendants further respond that they will suffer serious injury if Plaintiff can view their source code because Plaintiff "has represented himself as a software innovator capable of creating derivative works based on preexisting software" (Defs. Resp. at 1) and that Plaintiff "would be interested in using Defendants' code to his commercial advantage." (Defs. Resp. at 6). Next, Defendants argue that barring Plaintiff from viewing and/or analyzing Defendants' source code does not prejudice Plaintiff's ability to prosecute his claims. Defendants argue that Plaintiff has not been designated as, and is not qualified to be, an expert witness in this case; therefore, he need not personally compare his source code against Defendants' source code because he cannot testify regarding the comparison of the two code sets. Defendants aver that Plaintiff's retained experts, who are permitted to view the protected source code, will testify regarding the substantial similarity between Plaintiff's and Defendants' works, if any. (Defs. Resp. at 7).

Finally, Defendants state that they "relied on the provisions of the Protective Order in voluntarily producing some of their source code; now that the code is in hand, Plaintiff asks this Court to eliminate those protections, but keep the code." (Defs. Resp. at 9). This, according to Defendants, raises "strong policy considerations." (*Id.*).

The Federal Rules of Civil Procedure allow broad discovery. Rule 26(b)(1) provides for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any

documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Furthermore, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Pursuant to Federal Rule of Civil Procedure 26(c), the Court may limit discovery by entering a protective order. Fed. R. Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . [by] forbidding the disclosure or discovery . . . [and/or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way . . . ." Fed. R. Civ. P. 26(c)(1).

Here, the Court has previously entered a blanket protective order. (Doc. #30). "Blanket protective orders place upon the parties themselves . . . the initial burden of determining what information is entitled to protection." *Gillard v. Boulder Valley School Dist. Re.-2*, 196 F.R.D. 382, 386 (D. Colo. 2000). "Normally, a blanket protective order requires that counsel for a producing party review the information to be disclosed and designate the information it believes, in good faith, is confidential or otherwise entitled to protection." *Id.* If the party receiving the disclosure disagrees with the producing party's designation, it may object. *Id.* If the parties cannot resolve the disagreement, the Court will review the materials in light of the parties' protective order. *Id.*

"When a party to a blanket protective order disputes the level of protection designated by the producing party, the burden is on the producing party to justify its designation." *MSC Software Corp. v. Altair Engineering, Inc.*, 2012 U.S. Dist. LEXIS 69107 (E.D. Mich. May 17, 2012), citing *Foley v. Signator Investors, Inc.*, 2003 WL 22844110 at *2 (D. Kan. Nov. 25, 2003); *Gillard*, 196

F.R.D. at 386); *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 121 F.R.D. 264, 268 (M.D.N.C. 1988). "When the need for a certain level of protection is premised on the existence of confidential information, the designating party must make a particularized showing that the information sought to be protected is entitled to that protection." *MSC Software*, 2012 U.S. Dist. LEXIS 69107 at *12.

The fact that the protective order is stipulated to by the parties does not give the producing party unbridled authority to designate its productions as protected. *Phillip M. Adams & Associates, L.L.C. v. Dell, Inc.*, 2006 WL 4523602, at *2 (D. Utah June 12, 2006), objections overruled sub nom., *Phillip M. Adams & Associates, LLC v. Dell, Inc.*, 2008 WL 4862510 (D. Utah Nov. 7, 2008) ("A stipulated protective order cannot bestow any weight on a party's unilateral designation of protection. Allowing mechanical designation by a producer is a convenient and justifiable mechanism to move litigation along, but the designating party retains the fundamental responsibility to "show cause" for protection."). However, "[w]hen a party willingly accedes to the entry of a stipulated protective order, the Court will be hesitant to relieve that party of its obligations, particularly when the other party produced discovery in reliance on their agreement." *Parkway Gallery*, 121 F.R.D. at 268, citing *Omega Homes, Inc. v. Citicorp. Acceptance Co.*, 656 F.Supp. 393 (W.D.Va. 1987).

Plaintiff does not dispute that Defendants' source code is entitled to some protection; rather, Plaintiff wants the level of protection decreased so that he can review it along with his expert witnesses. Plaintiff's main challenge to Defendants' protective designation is that it prevents him from reviewing this "critical" source code evidence to determine if copyright infringement occurred. Tellingly, Plaintiff has not replied to Defendants' argument that Plaintiff *cannot* testify to his

24

findings at trial because he is not an expert witness and is not qualified to be an expert witness.  Nor has Plaintiff responded to Defendants' argument that restricting Plaintiff's ability to view Defendants' source code does not hinder his ability to prosecute his claims, due to Plaintiff's retainer of two expert witnesses who will testify regarding infringement.  Although Plaintiff argues that his review of the source code is somehow necessary to prosecute his breach of contract claim, he provides no explanation for this conclusion.  Thus, it is unclear that Plaintiff's challenge to the Attorneys' Eyes Only designation is entirely meritorious in the first place.

In any event, the Court finds that Defendants have met their burden of showing that "Attorneys' Eyes Only" designation of their source code is justified.  Source code constitutes a trade secret, *Dynamic Microprocessor Assoc. v. EKD Computer Sales*, 919 F. Supp. 101, 106 (E.D.N.Y. 1996), that goes to the heart of what makes a company and its products or services unique.  Plaintiff and Defendants are engaged in contentious copyright litigation.  While this Court declines to delve into the issue of whether Plaintiff is or is not likely to "steal" Defendants' source code, the fact of the matter is that allowing Plaintiff to view it would make its exploitation a possibility.  Safeguarding against this possibility was one point of entering the protective order in the first place.

Importantly, the parties stipulated to the protective order as to its form and content.  (Doc. #30 at 26).  Defendants aver that they relied on the protective order in producing their source code voluntarily.  Even though the fact that the parties stipulated to the protective order is not an independent reason to deny Plaintiff's motion, see *Phillip M. Adams & Associates*, 2006 WL 4523602, at *2, the fact that Defendants *relied* on the stipulated protective order in producing their source code weighs in Defendants' favor.  *Parkway Gallery*, 121 F.R.D. at 268.

Based on the foregoing, the Court shall DENY Plaintiff's Motion for Order for Limited

Relief From The Protective Order (Doc. #46).

## CONCLUSION AND ORDER

Based on the foregoing, Plaintiff's Motion for Order for Limited Relief from Protective Order

is DENIED. (Doc. #46).   Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant

to Fed. R. Civ. P. 12(b)(6) (Doc. #49) is GRANTED IN PART AND DENIED IN PART:

1)     Defendants' Motion is GRANTED to the extent that Plaintiff's Amended Complaint seeks statutory damages and attorney's fees related to Life's infringement of the Oncomine 4.0 Prototype and Molecular Concepts Maps Software;

2)     Defendants' Motion is DENIED in all other respects;

**IT IS SO ORDERED.**

S/Sean F. Cox_____
Sean F. Cox
United States District Judge

Dated:  January 20, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 20, 2015, by electronic and/or ordinary mail.

S/Jennifer McCoy_____
Case Manager

26