UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOURTHERN DIVISION

| | |
|---|---|
| **VASUDEVA MAHAVISNO,** an individual, **Plaintiff,** v. **COMPENDIA BIOSCIENCE, INC.,** a Michigan corporation, and **LIFE TECHNOLOGIES CORPORATION,** a Delaware corporation, **Defendants.** | Case No. 2:13-CV-12207-SFC-MAR District Judge: Hon. Sean F. Cox |

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL THE EXPERT DEPOSITION OF DANIEL RHODES (Doc. #82)**

### I.  Introduction

This matter is before the Court on Plaintiff's Motion to Compel the Expert Deposition of Daniel Rhodes (Doc. #82).  In this motion, Plaintiff Vasudeva Mahavisno ("Plaintiff") moves to compel the expert deposition of Dr. Daniel Rhodes, a non-retained expert identified by Defendants Compendia Bioscience, Inc. ("Compendia") and Life Technologies Corporation ("Life") (collectively "Defendants").

The Court finds that the issues have been adequately presented in the parties briefs and that oral argument would not significantly aid the decisional process.

1

E.D. Mich. L.R. 7.1(f)(2). The Court therefore orders that the motion will be decided upon the briefs.

For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for leave.

## II. Facts and Procedural Background

This case involves Plaintiff's claims that Compendia breached promises to pay him in return for creating copyrighted software, and that both Defendants' versions of "Oncomine" software infringe his copyright. (Doc. #45.)

Plaintiff and Dr. Rhodes have a long history relevant to each of Plaintiff's claims. In 2002, both were at the University of Michigan (UM) – Plaintiff as a student computer consultant under Dr. Arul Chinnaiyan and Dr. Rhodes as a Ph.D. candidate under Dr. Chinnaiyan. While employed at UM, Dr. Chinnaiyan and Dr. Rhodes conceived the idea for what would become Oncomine software. Plaintiff, as a student and later as a UM employee, wrote the computer software for early versions of Oncomine software.

In 2006, Dr. Chinnaiyan and Dr. Rhodes co-founded Compendia to further develop and commercialize the Oncomine software. At Compendia's request, Plaintiff continued designing the software and writing the software code for the Oncomine product, which Plaintiff now claims to own a copyright. In return, Plaintiff alleges that Compendia promised to pay him a salary, a bonus, stock

options and a percentage interest in Compendia. Compendia never paid Plaintiff this or any other compensation, and Plaintiff stopped writing code for Oncomine software in 2007.

Life acquired Compendia in October 2012. Compendia and Life sell versions of Oncomine software that Plaintiff claims infringe his copyright to the software. In September 2012, just before Life acquired Compendia, Plaintiff alleges that Dr. Rhodes contacted him and offered to have Compendia pay him $25,000 in return for Plaintiff signing a written document transferring his intellectual property rights in the Oncomine software to Compendia. Plaintiff refused this offer, believing that he is entitled to more than $25,000.

During discovery in this case, months after Plaintiffs deposed Dr. Rhodes as a fact witness on March 18, 2014. Defendants identified Dr. Rhodes as an expert witness on September 24, 2014, and as a Rule 30(b)(6) designee on November 7, 2014. On November 18, 2014, Plaintiff deposed Dr. Rhodes as a Rule 30(b)(6) corporate representation, but not as an expert witness.

On January 20, 2015, Plaintiff asked Defendants for a date to depose Dr. Rhodes as an expert witness. On January 22, 2015, Defendants objected. Discovery closed on February 15, 2015. (Doc. #47.) Shortly after the close of discovery, Plaintiff prepared the instant motion and, on February 26, 2015, once more sought concurrence from Defendants. Plaintiff warned that if concurrence

was not received, he would file the motion the next day. Defendants advised it would consult with Plaintiff the following week but, as promised, Plaintiff filed the instant motion on February 27, 2015.[1]

### III. Legal Standards

Generally speaking, a party has the right to "depose any person who has been identified as an expert whose opinions may be presented at trial." Fed R. Civ. P. 26(b)(4)(A). However, Dr. Rhodes has already been deposed in this case as a fact witness and as a corporate representative in a Rule 30(b)(6) deposition, and Defendants refuse to produce Dr. Rhodes for an additional expert deposition. Accordingly, to the extent that Plaintiff must obtain the Court's leave, the Federal Rules of Civil Procedure provide that leave must be granted to the extent consistent with Rule 26(b)(2). Fed R. Civ. P. 30(a)(2)(A)(ii). Rule 26(b)(2)(C) requires the Court to limit Dr. Rhodes's deposition as an expert witness if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

---

[1] Defendants argue that Plaintiff failed to satisfy the meet and confer requirement of Local Rule 37.1. This requirement, however, was satisfied when Defendants objected to the idea of Dr. Rhodes being deposed as an expert witness in response to Plaintiff's request for a date. The Court will not hold Plaintiff's additional attempt for concurrence against him, particularly where Defendants' briefing demonstrates they would have continued to object anyway.

> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues

Fed R. Civ. P. 26(b)(2)(C).

**IV. Analysis**

Starting with subsection (i) of Rule 26(b)(2)(C), the Court must limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. . . ."

The Court finds that an expert deposition of Dr. Rhodes would not be cumulative or duplicative. An expert deposition is very different from a fact deposition of an individual or a corporate entity. In a fact deposition, the examiner is generally limited to asking questions within the senses of the witness – facts that the witness saw, heard, smelled, tasted, did, etc. In an expert deposition, the witness is allowed to testify on expert opinions based on the science and evidence. For example, in this case, Defendants expect Dr. Rhodes to testify as an expert on a number of areas, including his opinion on the "substantial differences" between Defendants' versions of Oncomine software and Plaintiff's copyrighted code, and the valuation, ahead of Life's acquisition, of Compendia's then-current version of

the Oncomine software compared to its other assets. (*See* Defs' Witness List, Doc. #85 Ex. 4 at pp. 4-7.)

Defendants argue that Dr. Rhodes' existing deposition testimony as a fact witness and as a Rule 30(b)(6) designee already addresses the areas on which he is expected to testify as an expert. Even that were true, the Court finds that Dr. Rhodes necessarily addressed these areas from his perspective as an actor with firsthand knowledge, not from the perspective of an expert who, unlike an "ordinary witness," "is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993) (citing Fed. R. Evid. 701-703).

Dr. Rhodes' existing fact deposition testimony about his *knowledge* of differences between Defendants' versions of Oncomine software and Plaintiff's copyrighted code is substantively much different from deposition testimony about his expert *opinion* that those differences are "substantial" under copyright law. Similarly, Dr. Rhodes' existing testimony about his *knowledge* of the valuation of Compendia's then-current version of the Oncomine software compared to its other assets is substantively much different from deposition testimony about his *opinion* of the valuation. It follows that Dr. Rhodes' deposition testimony from his perspective as an expert is not "cumulative or duplicative" (let alone

6

"unreasonably" so) and cannot "be obtained from some other source." Fed R. Civ. P. 26(b)(2)(C)(i).

Moving on to subsection (ii) of Rule 26(b)(2)(C), the Court must limit discovery if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action. . . ."

The Court finds that Plaintiff has not had any "opportunity to obtain" Dr. Rhodes' deposition testimony in his role as an expert witness. Fed R. Civ. P. 26(b)(2)(C)(ii). As mentioned above, a deposition of a fact witness is very different from the deposition of an expert witness. At the time of the Plaintiff's individual, fact deposition of Dr. Rhodes, Dr. Rhodes was not designated as an expert witness and thus Plaintiff did not have an opportunity to question Dr. Rhodes about this expert opinions and qualifications. Although Defendants suggest that Plaintiff had the opportunity to question Dr. Rhodes at the corporate fact depositions of Compendia and Life on November 18, 2014, that deposition only involved obtaining fact information in possession of the corporations. Moreover, Plaintiff had very little time to prepare to take an expert deposition given that Defendants identified Dr. Rhodes as a Rule 30(b)(6) designee on November 7, 2014.

Lastly, moving on to subsection (iii) of Rule 26(b)(2)(C), the Court must limit discovery if "the burden or expense of the proposed discovery outweighs its

likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

Because Dr. Rhodes' expert opinions go to the very core of Plaintiff's claims, this deposition testimony is likely to be highly beneficial to Plaintiff, and is worth its "burden or expense," something Defendants in any event should have anticipated when they identified Dr. Rhodes as one of their experts.[2] Fed R. Civ. P. 26(b)(2)(C)(iii). Moreover, the Court notes that Dr. Rhodes resides in this district and a limited deposition would not be burdensome or unreasonably expensive.

The Court notes that Defendants argue that Plaintiff is seeking to modify the Court's scheduling order because a notice of deposition was not served before the discovery cutoff of February 15, 2014. However, the Court notes that Plaintiff specifically telephoned Defendants on or about January 20, 2014 asking for an available date to take the expert deposition of Dr. Rhodes and Defendants refused to allow an expert deposition of Dr. Rhodes. Under these facts, the Court the Court finds that a separate deposition notice was required and that there is good cause exists to allow Plaintiff to take the expert deposition of Dr. Rhodes.

---

[2] Neither party argues that "the amount in controversy" or "the parties' resources" influences the outcome under Rule 26(b)(2)(C)(iii) one way or the other.

8

### V. Conclusion

The Court finds that nothing in Rule 26(b)(2) calls for a limitation on Dr. Rhodes being deposed as an expert witness. Plaintiff's motion to compel is therefore **GRANTED**. Plaintiff shall have 30 days from the date of this order to take the expert deposition of Dr. Rhodes.

**IT IS SO ORDERED.**

Dated: September 29, 2015          s/ Sean F. Cox
                                                Sean F. Cox
                                                U. S. District Judge

I hereby certify that on September 29, 2015, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

                                                           s/ Jennifer McCoy
                                                           Case Manager