UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOURTHERN DIVISION

**VASUDEVA MAHAVISNO,**
an individual,

          **Plaintiff,**

v.

**COMPENDIA BIOSCIENCE, INC.,**
a Michigan corporation, and
**LIFE TECHNOLOGIES
CORPORATION,**
a Delaware corporation,

          **Defendants.**

Case No. 2:13-CV-12207-SFC-MAR

District Judge: Hon. Sean F. Cox

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
COMPENDIA BIOSCIENCE, INC.'S AND LIFE TECHNOLOGY CORPORATION'S
MOTIONS FOR SUMMARY JUDGMENT (Doc. ## 89, 90)**

    **I.**    **Introduction**

This is a case alleging copyright infringement and breach of contract. Before the Court are Defendant Compendia Bioscience, Inc.'s Motion for Summary Judgment or Partial Summary Judgment (Doc. #89) and Defendant Life Technologies Corporation's Motion for Summary Judgment or Partial Summary Judgment (Doc. #90). The motions have been fully briefed by the parties, and the Court heard oral argument.

For the reasons set forth below, the Court shall **GRANT IN PART** and **DENY IN PART** Defendants' motions for summary judgment or partial summary judgment.

    **II.**    **Facts and Procedural Background**

In 2002, Plaintiff Vasudeva Mahavisno was a student at the University of Michigan ("UM") working as a computer consultant in the Department of Pathology, under the direction of Professor Arul Chinnaiyan, M.D., Ph.D. ("Chinnaiyan"). (Am. Compl. at ¶¶ 19, 21.)

1

During Plaintiff's employment with UM, Dr. Chinnaiyan and a Ph.D. candidate, Daniel Rhodes ("Rhodes"), together conceived an idea for a computer program that would allow cancer researchers to process and analyze data over the internet related to cancer genes. (*Id*. at ¶ 21.) Chinnaiyan and Rhodes approached Plaintiff about writing the source code for their computer software product, which was to be called "Oncomine." (*Id*. at ¶ 23.) Plaintiff began writing software code in 2002 and finished his first version, entitled Oncomine 2.0, in November 2003. (*Id*. at ¶ 26.)

After he graduated in 2003, Plaintiff continued to work at UM as a full-time employee. (*Id*. at ¶ 25.) Plaintiff wrote additional code for, and made enhancements to, the Oncomine 2.0 software, which eventually culminated in the release of Oncomine 3.0 in 2005. (*Id*. at ¶¶ 28, 29.) Because Plaintiff was an employee of UM, and subject to an employment agreement, UM owned all intellectual property rights in Oncomine versions 2.0 and 3.0.

In 2006, Chinnaiyan and Rhodes formed a company named Compendia Bioscience, Inc. to more fully commercialize their research and the Oncomine academic product that they had developed at UM. (*Id*. at ¶ 30.) Compendia and UM then entered into a licensing agreement, whereby UM granted Compendia an exclusive license to use, market, distribute, and exploit its copyright and other rights in Oncomine 3.0. (*Id*. at ¶¶ 31-32.) Several amendments were made to this licensing agreement over the course of the parties' professional relationship. (*Id*. at ¶¶ 33-34; *Id*. at Exs. E and F.)

Plaintiff was never an employee of Compendia. (*Id*. at ¶¶ 44, 50.) Nevertheless, from January 2006 until April 2007, Plaintiff states that he "developed and created software upgrades and improvements for the Oncomine software for Compendia and at Compendia's request." (*Id*. at ¶ 35; Pl.'s CSF ¶ 20, Doc. #109-1.) Plaintiff alleges that his work was done separate and

distinct from his employment at UM. (*Id*. at ¶ 54.) In fact, according to Plaintiff, Compendia was not allowed to use UM employees to commercialize Oncomine as Compendia was now a private company.

Plaintiff alleges and testified in his deposition that he wrote the additional code because "Compendia made various promises to [him] regarding how Compendia would compensate him for use of his work including a promise that he would be receive an ownership interest in Compendia commensurate with his contributions to the enterprise. . . ." (*Id*. at ¶ 46.) Plaintiff further alleges that "these promises include the following: the promise of a salary; the promise of a bonus; the promise of stock options; and the promise of a percentage interest in Compendia." (*Id*. at ¶ 89; Pl.'s Dep. 537:13-17, Doc. #109-19.) Compendia was unable to pay a salary because there was a limitation with Plaintiff's work visa, but Compendia promised to modify Plaintiff's visa. (Pl.'s Dep. 53-54:15-19, Doc. #109-7.) According to Plaintiff, Compendia encouraged Plaintiff to keep writing the software and in return Compendia would give him an ownership interest in Compendia. (*Id*.; *see also* pl.'s dep. 373:9-25, doc. 109-19.) For example, Plaintiff testified as follows at his deposition:

> I believed that I was part of a startup and an equal share and ownership of it. That was always cloudy because of my visa status. So I felt misled by Daniel Rhodes and Arul Chinnaiyan, because they kept making promises saying, Vasu, you've created something really good here, continue working on it, because of your visa status it's a little complicated at this point, don't worry about all the legal stuff, we will take care of it, but continue working. That's the impression I got and that was the - - that was what I was basing my work on. That, number one, I was working for Compendia, not as just an employee but as an owner, as a stakeholder building a software that is going to benefit the company that I'm going to be part of.

(Pl.'s Dep. 373:9-25, Doc. #109-19.)

3

In spite of promises of an ownership interest, stock options, a salary, and a bonus, Plaintiff alleges that he never received any compensation from Compendia for use of his computer source code. (*Id*. at ¶ 43.) Plaintiff never entered into a written agreement with Compendia regarding the compensation or ownership of intellectual property for his work on the Oncomine software. (*Id*. at ¶ 52-53.)

On or about April 2007, Plaintiff stopped writing software code for Compendia. (Pl.'s CSF ¶ 17, Doc. 109-1.) Plaintiff testified that he stopped working for Compendia because Compendia did not live up to its promises to pay him a salary and to give him the position he wanted at Compendia. (Pl.'s Dep 498:1-11, Doc. #109-19.) In fact, Plaintiff never received any compensation from Compendia. (*Id*.) Although he did not receive the promised salary, Plaintiff still expected Compendia to keep their promise of giving him an ownership interest in Compendia if the company was ever sold. (*Id*. at 498:15-22, 529:8-17, and 532:5-8.)

On or about September 21, 2012, Compendia's shareholders, including UM, consented to "the proposed acquisition of Compendia by Life" Technologies Corporation ("Life Technologies" or "Life"). (Am. Compl. ¶ 59 and Ex. I.)

Shortly before the purchase of Compendia was finalized by Life Technologies, on September 24, 2012, Rhodes, on behalf of Compendia, contacted Plaintiff and offered to pay him $25,000 in exchange for Plaintiff's irrevocable assignment of "any and all intellectual property rights" in the Oncomine Software. (*Id*. at ¶ 60; September 24, 2012 Letter, *id*. at Ex. J.) That offer letter, entitled "Payment of Appreciation Bonus upon Change in Control," refers to Plaintiff as an "independent contractor." (*Id*.) Plaintiff refused Compendia's offer of $25,000 for his intellectual property rights. (*Id*. at ¶ 60.) Plaintiff felt he was entitled to more money based on the promises that Compendia had made to him.

4

Defendant Life Technologies Corporation finalized its purchase of Compendia in October 2012, when Compendia became a wholly owned subsidiary of Life Technologies. (Pl.'s CSF ¶ 6, Doc. #109-1.)

Shortly thereafter, Plaintiff registered his copyright in the computer software code for the Oncomine Software with the United States Copyright Office.

On May 17, 2013, Plaintiff filed this case against Compendia and Life. In Count I, Plaintiff alleges that Compendia infringed Plaintiff's copyright in Plaintiff's computer software. In Count II, Plaintiff alleges that Life infringed Plaintiff's copyright in Plaintiff's computer software. In Count III, Plaintiff alleges a claim for "Breach of Implied-in-Fact Contract" based on the promises made to Plaintiff to induce Plaintiff to keep writing computer software for Compendia.

Presently before the Court are Defendants' motions for summary judgment. In the motions, Defendants make the following arguments. First, Defendants argue that they are entitled to summary judgment on Plaintiff's Count III for beach of implied-in-fact-contract because that claim is barred by the statute of limitations. Second, Defendants argue that they are entitled to summary judgment on Plaintiff's Counts I and II for copyright infringement because Plaintiff did not lawfully create derivative works and thus is not entitled to protection under the Copyright Act. Third, Defendants argue that they are entitled to summary judgment on Plaintiff's Counts I and II for copyright infringement because Plaintiff's granted Defendants an implied nonexclusive license to use his software code.

### III. Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court

must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States,* 342 F.3d 493, 497 (6th Cir.2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan,* 342 F.3d at 497(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter,* 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex,* 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton,* 369 F.3d at 909 (citing *Matsushita,* 475 U.S. at 587). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson,* 477 U.S. at 251–52.

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment—the disputed factual issue must be material. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a

jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Id.* at 252 (alteration in original) (citation omitted). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted).

IV. **Analysis**

A. **Plaintiff's Copyright Claims are Barred Because Defendants Had an Implied License to Use Plaintiff's Source Code**

Defendants argue that Plaintiff's copyright claims should be dismissed because Plaintiff granted Compendia an implied license to use is copyrighted computer software.

If a copyright owner gives a person a license or permission to use copyrighted material, then the copyright owner may not sue the person for copyright infringement unless the license is terminated or revoked. A copyright owner may give a nonexclusive license expressly by words, either orally or writing, or implicitly by conduct. *Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998).

An implied license arises where the following three element test is satisfied: "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requester copy and distribute it." *Lulirama Ltd., Inc. v. Axcess Broad. Serv*., 128 F.3d 872, 879 (5th Cir. 1997) (*quoting IAE, Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). In other words, where the objective evidence leads to the conclusion that the copyright owner intended the defendant to use the copyrighted work, the copyright owner should not later be able to sue for copyright infringement for that use.

7

Although an implied license precludes a claim for copyright infringement, it does not preclude a claim for breach of contract or promissory estoppel, such as where the parties entered into a contract for the use of a copyrighted work and the receiving party failed to pay money for that use as provided for in the contract. *Johnson v. Jones*, 149 F.3d at 500 (discussing *Effects Associates, Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990)).

The Court finds that the three elements for an implied license have been satisfied in this case and that the undisputed facts show that Plaintiff created and gave his computer software code to Compendia with the intent that Compendia use the software in its products. Plaintiff's position in this case is that Defendant Compendia promised him an ownership interest in Compendia, a startup company, along with a salary and a bonus once his visa was modified, if Plaintiff kept developing and creating computer software for Compendia. Because of the promises, and particularly the promise he would have an ownership interest in Compendia, Plaintiff developed and delivered his alleged copyrighted software code to Compendia.

Starting with the first element of the test for establishing an implied license, the first element asks whether "a person (the licensee) requests the creation of a work. . ." Plaintiff does not dispute that Compendia asked him to create and write computer software for Compendia after Compendia was created. In fact, Plaintiff testified at his deposition that Compendia requested Plaintiff to write computer software for it. (Mahavisno April 17, 2014 Dep. 54:10-19 and 147:9-14, Doc. #109-7.)

Moving on to the second element for establishing an implied license, the second element asks whether "the creator (the licensor) ma[de] the particular work and deliver[ed] it to the licensee who requested it. . . ." Plaintiff testified that he created his copyrighted software code

8

and delivered it to Compendia so that Compendia could use and distribute the code. For example, in this deposition testimony, Plaintiff testified:

> Q. And it was your understanding that this was work you were doing for Compendia, correct?
>
> A. This is the work I was doing for Compendia; however, it was also what - - that I knew that I'm going to be part of it.

(Mahavisno April 17, 2014 Dep. 147:9-13, Doc. #109-7.) In his response brief to the Defendants summary judgment motions, Plaintiff does not dispute the fact that he created and delivered his copyrighted software to Compendia.

Moving on to the last element for establishing an implied license, the third element asks whether "the licensor intend[ed] that the licensee-requester copy and distribute" the licensor's copyrighted work. *Id.* The record establishes that Plaintiff intended that Compendia copy, distribute, and sell his copyrighted software code in Compendia's software products because Compendia promised him an ownership interest in Compendia and he wanted Compendia to be a valuable company. For example, during his deposition, Plaintiff testified:

> Q. At the time did you believe you were creating products for Compendia?
>
> A. I was creating products for Compendia, that is correct, with the understanding that I will be made part owner of the company.
>
> Q. Did you have any intent at the time that you would license Compendia to use the products you were creating?
>
> \* \* \*
>
> A. I did not know – I don't know what – all I know, as I said, I'll repeat my answer again, all I know was I was creating software for an entity that I believed I was going to be part of.

(Mahavisno January 16, 2015 Dep. 375:7-21, Doc. #109-19.) At oral argument on these summary judgment motions, Plaintiff's attorney admitted that Plaintiff intended Compendia to

9

use the software code that Plaintiff had written. For example, the transcript from oral argument states:

> THE COURT: As part owner of this company, what did [Plaintiff] think the company was going to do with the code that he wrote?
>
> MR. SUSSER: License it, Your Honor. License it out to companies like Abbott and other pharmaceuticals.
>
> THE COURT: So he knew and, in fact, he wanted Compendia to copy and distribute whatever product he prepared? Is that true?
>
> MR. SUSSER: While he was there, yeah.

(September 10, 2015 Oral Argument Tr. 20:7-18.)

Moreover, even at the time Plaintiff stopped writing the software code for Compendia in April 2007 and otherwise stopped working for Compendia, he never once told Compendia to stop using his software code. Rather, Plaintiff wanted Compendia to be successful so that if it was sold to a larger corporation, he would receive the same buy-out as the other founders of Compendia. For example, Plaintiff testified as follows in his deposition:

> Q. Did you ever demand of Compendia that they obtain a written license from you?
>
> A. Again, as to what time frame are you talking about?
>
> Q. Prior to this lawsuit?
>
> A. I did not - - I did not tell - - reach out to Compendia to request them to obtain a license from me.

(Mahavisno January 16, 2015 Dep. 375:7-21, Doc. #109-19.) The Court confirmed this fact at the oral argument on this summary judgment motion.

> THE COURT: Let me get more specific. Where in the record [does] plaintiff tell Compendia when [he] leaves in 2007 not to use his software anymore? I didn't see anything in the brief citing that.

10

>MR. SUSSER: Where he specifically says that?
>
>THE COURT: Yes. Where he tells Compendia not to use his software anymore.
>
>MR. SUSSER: I am not aware of any specific reference like that, Your Honor.
>
>THE COURT: Any statement?
>
>MR. SUSSER: Statement like that, no.

(*Id*. 18:10-21.)

Plaintiff testified that he wanted Compendia to be successful so that if the company was ever sold, he would share in the proceeds as an owner. If Compendia was sold, Plaintiff believed at that point in time he should share in the proceeds as an equal owner of the company. For example, Plaintiff testified as follows in his deposition:

>A. But my belief is that they would have come to me if they sold the company. My belief and faith was they will do the right thing and keep the original promise of ownership in the company when they sold it.
>
>Q. Why would you – why would the promise of ownership in the company be dependent on their selling?
>
>A. When you sell a company, I mean, if I am a part owner of the company you make money out of it, I'm sure . . . that I would need to receive some of that.

(Mahavisno January 16, 2015 Dep. 532:5-8, Doc. #109-19.)

The Court finds that even if Plaintiff's testimony is taken as true, a reasonably jury could only conclude that the facts establish that Plaintiff granted Compendia an implied license to use his software code. The three element test for an implied license has been clearly established, even when the evidence is viewed in a light most favorable to Plaintiff. Plaintiff created his software code at the direction of Compendia, he delivered that software to Compendia so it could be used by Compendia, and Plaintiff intended that Compendia copy and use his software code. While Plaintiff may have a claim for breach of contract, promissory estoppel, or unjust

11

enrichment for an ownership interest in Compendia, Plaintiff cannot maintain a copyright infringement case where he consented to Defendants' use of his copyrighted software code.

Plaintiff next argues that although Plaintiff may have impliedly licensed or consented to Defendants using his software from 2006 to 2013, Plaintiff revoked the implied license when he filed this lawsuit in 2013.

However, an implied "nonexclusive license may be irrevocable if supported by consideration. This is so because a nonexclusive license supported by consideration is a contract." *Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc*., 128 F.3d 872, 882 (5th Cir. 1997) (citations omitted).

Plaintiff's own testimony is that there was a contract between the parties, which was supported by consideration, and that the contract cannot be unilaterally rescinded. "Consideration may constitute a return promise or a performance. . . ." *Timko v. Oakwood Custom Coating, Inc.*, 244 Mich. App. 234, 244 (2001) (citing Restatement (Second) of Contracts § 71). Plaintiff's testimony is that the parties had made promises to each other and/or that Plaintiff performed in response to a promise from Compendia. Specifically, Plaintiff testified that Compendia promised to give him an ownership interest in Compendia among other things if Plaintiff wrote software code for Compendia. Plaintiff testified that he relied on Compendia's promise of an ownership interest and wrote the software code for Compendia. In fact, Plaintiff's position in this case is that the parties have a contract and he seeks to enforce the contract. Therefore, according to Plaintiff's own testimony, there was consideration and therefore Plaintiff could not unilaterally revoke that contract.

Moreover, Plaintiff did not revoke the implied license or contract between the parties simply by filing the present lawsuit. In his Amended Complaint, Plaintiff has simply alleged

12

alternative theories of recovery, i.e. claims of copyright infringement and breach of implied-in-fact contract. In the implied-in-fact contract claim, Plaintiff is simply seeking to enforce the promises that Compendia allegedly made to him, not terminate the contract between the parties or revoke the implied license. Nowhere in his Amended Complaint did Plaintiff state that he is revoking the license between the parties.

The Court finds this case to be similar to *Effects Associates, Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990). In *Effects Associates*, the plaintiff created special effects movie footage at the request of the defendant, a movie producer, knowing that the movie footage would be included in defendant's horror movie. The defendant incorporated the special effects footage in his movie. However, because of poor quality of the special effects footage, the defendant only paid the plaintiff half of what he had promised. After unsuccessful demands for full payment, the plaintiff brought a copyright claim.

The district court granted the defendant's summary judgment motion, finding that the plaintiff had given the defendant an implied license to use the footage. In affirming the district court's decision, the Ninth Circuit observed that the evidence demonstrated that plaintiff had "created a work at defendant's request and handed it over, intending that defendant copy and distribute it." *Id*. at 558. In particular, the plaintiff's testimony reflected that he understood that the footage would be incorporated into the movie. When the plaintiff delivered the footage to defendant, he never warned the defendant that use of the footage would constitute copyright infringement. *Id*. at 558 n.6.

The Ninth Circuit held that the plaintiff had impliedly granted to the defendant a non-exclusive right to incorporate the special effects footage into his movie and distribute the film. The Ninth Circuit held that the plaintiff's copyright claim was barred. The Ninth Circuit made a

point to state that the plaintiff could still pursue money owed under a breach of contract theory. Hence, the Court prefaced its opinion with the statement: "What we have here is a failure to compensate," i.e., not a copyright infringement claim. *Id*. at 555.

Similar to the *Effects Associates* case, in this case, while Plaintiff may have a claim for breach of contract, promissory estoppel, or unjust enrichment, it is evident that Compendia had an implied license to use Plaintiff's software code. Plaintiff intended his software code be included in the Compendia products. While Plaintiff argues that he provided the software code to Compendia based on Compendia's promise to give him an ownership interest in Compendia, such a claim is for breach of contract or unjust enrichment, not copyright infringement.

Accordingly, the Court grants Defendant's motion for summary judgment as to Counts I and II for copyright infringement.

### B. Plaintiff's Breach of Implied-In-Fact Claim is Barred in Part by the Statute of Limitations

In his Amended Complaint, Plaintiff alleges that Compendia "made various promises to pay for use of [his] works and to induce [him] to produce and continue producing source code for Compendia. These promises include the following: the promise of a salary; the promise of a bonus; the promise of stock options; and the promise of a percentage interest in Compendia." (Am. Compl. ¶89, Doc. #45.)

Defendant Compendia argues that Plaintiff's breach of contract is time barred by Michigan's six year statute of limitations for breach of contract actions. M.C.L. § 600.5807(8). The Court rejected the same argument in Defendants' previous motion to dismiss because it is not clear from the face of the Amended Complaint when exactly Compendia breached the alleged promise it made to Plaintiff. (Opinion, Doc. #73.) Compendia now renews this argument with evidence beyond Plaintiff's Amended Complaint.

14

The six year statute of limitation "begins to run at the time that the promisor fails to perform under the contract." *Miller-Davis Co. v. Ahrens Constr., Inc*., 495 Mich. 161, 180 (2014). Importantly, the crucial point in time is the date of the breach and not the date that the breach is discovered. *Isely v. Capuchin Province*, 880 F. Supp. 1138, 1145 (E.D. Mich. 1995).

At oral argument on these motions for summary judgment, Plaintiff conceded that his claims for lost salary and a bonus are time barred by the statute of limitations. Accordingly, Plaintiff's claims for a salary and a bonus under an implied-in-fact contract theory are thereby dismissed. (September 10, 2015 Oral Argument Tr. 4:14-21.)

Compendia argues that Plaintiff has a single claim for a package of compensation and that the legal claim for the package accrued when any one of the promised components of the compensation package was not provided. Compendia also argues that, by April 2007, it was clear that Compendia had refused to perform all the promises Plaintiff believed had been made to him.

The Michigan Supreme Court recently decided a similar case involving one contract with promises separately breached both before and after the six-year date under M.C.L. § 600.5807(8). In *Miller-Davis Co. v. Ahrens Construction, Inc*., the Michigan Supreme Court held that separate breaches of the same contract can give rise to separate statute of limitations periods. In *Miller-Davis*, the separate breaches of the same contract were of a promise to build a roof free of defects and a promise to indemnify for corrective work required to fix defects in the roof. The Michigan Supreme Court found that those were distinct breaches that had logically distinct points of accrual. *Id*. at 181. Although the accrual date for the breach of the promise to build a roof free of defects was before the six-year statute of limitations date, the Michigan Supreme Court explained that the later breach of the promise to indemnify provided an

15

"independent basis" for a contract claim, and held that the claim for the breach of this promise was not time-barred. *Id.* at 181-182.

The Court finds that a reasonable jury could find this case similar to *Miller-Davis Co. v. Ahrens Construction, Inc*. Specifically, a reasonable jury could find that Compendia promised to give Plaintiff an ownership interest in Compendia when Compendia was sold and that Compendia breached that promise in 2012 when it failed to give Plaintiff an ownership interest or otherwise give Plaintiff proceeds from the sale of Compendia. For example, Plaintiff testified:

> My belief and faith was they will do the right thing and keep the original promise of ownership in the company when they sold it.

(Mahavisno January 16, 2015 Dep. 532:6-8, Doc. 109-19.) There is a question of fact for the jury whether to credit Mr. Mahavisno's testimony. If the jury accepts Mr. Mahavisno's testimony, Compendia's breach of its promise occurred in 2012 well within the six-year statute of limitations.

Accordingly, the Court denies Compendia's motion for summary judgment to the extent it seeks to dismiss Plaintiff's claim for an ownership interest in Compendia based on a theory of implied-in-fact contract.

### V. Conclusion

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions for summary judgment. Specifically, the Court grants Defendants' motions for summary judgment as to Counts I and II for Copyright Infringement and hereby dismisses Counts I and II. As to Count III for Breach of Implied-in-Fact Contract, the Court grants Compendia's summary judgment motion to the extent that it seeks to dismiss Plaintiff's claims for breach of the promises of a salary and a bonus, but denies Compendia's summary judgment motion to the extent it seeks to dismiss Plaintiff's claim for an ownership interest in Compendia.

The parties shall contact the Court's Special Master Christopher G. Darrow within two weeks to discuss the possibility of this case settling before trial.

**IT IS SO ORDERED.**

Dated:  February 23, 2016	s/ Sean F. Cox
	Sean F. Cox
	U. S. District Judge


I hereby certify that on February 23, 2016, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

	s/ Jennifer McCoy
	Case Manager